UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ROBERT MAURICE HOGAN                                CIVIL ACTION

VERSUS                                              NO. 15-1258

TERREBONNE PARISH CRIMINAL                          SECTION "I" (2)
JUSTICE COMPLEX ET AL.

## REPORT AND RECOMMENDATION

Plaintiff, Robert Maurice Hogan, is a prisoner currently incarcerated in the Terrebonne Parish Criminal Justice Complex ("TPCJC") in Houma, Louisiana. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against the TPCJC, Sheriff Jerry Larpenter, Warden Thomas Cope and Colonel Mike Solet. He alleges that while incarcerated in the TPCJC for about four-and-a-half months in 2015, the telephones in his unit of the jail were turned off daily, depriving him of access to his attorney. He seeks injunctive relief and monetary compensation. Record Doc. No. 1 (Complaint at ¶ V).

On June 25, 2015, I conducted a telephone conference in this matter. Participating were plaintiff pro se and William Dodd, counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

Plaintiff testified that he was being detained at the time of the conference on a "parole hold" alleging violation of his parole on a previous attempted simple burglary conviction. He stated that he was originally arrested on February 10, 2015, and placed in the TPCJC, where he remained through the date of the telephone conference, on a felony charge of using a telephone to communicate an arson threat, which was later reduced to misdemeanor criminal mischief. He stated that he plead guilty to the reduced criminal mischief charge on June 24, 2015.

Hogan testified that his claims in this case arise from defendants' practice during his four-and-half months of incarceration of turning off the telephones in the unit of the jail where he was being held as a disciplinary measure against inmates who would hang bed sheets or other items from their bunks, blocking the view of correctional officers into their cell areas. He said the deputies would turn off the telephones in the holding area, until the inmates would take down whatever was blocking the deputies' view into the cell area.

Hogan testified that sometimes the telephone service would be turned off all day, sometimes "for days" at a time. He speculated that subpoenaing the telephone records would show when and for how long the phone service had actually been turned off.[1] He conceded that the deputies' need for the inmates to take down the materials blocking their

---

[1] He also expressed a litany of trivial and irrelevant complaints having nothing to do with his case.

view into the holding area was a concern about jail security, since the correctional officers need to able to see the inmates to maintain order.

Asked to estimate the number and amounts of time during which telephone service was turned off, Hogan said "days at a time" in February, with some days on which the telephones were turned on late in the day. He explained that ordinarily the telephones in the jail are turned on for the prisoners to use beginning at 8:00 a.m. and then turned off at the 11:00 p.m. bed time for inmates. He complained that the telephones were cut off to all 40 prisoners housed in his unit, even if only one inmate had something hanging from a bunk that was blocking the guards' view. Hogan said the phones were turned off in this manner intermittently, during his entire stay in the unit. He acknowledged that the phones would be turned on again when the inmates complied with the requirement that they not hang things that would block the guards' view.

Asked what effect turning the phones off as a disciplinary measure had on him personally, Hogan stated, "I was trying to get in touch with my attorney. . . . I had some very important things I needed to speak . . . about at a certain time." He said he asked the jail administrators if he could be "brought to the front" to use a telephone, but he was not allowed to do so. Although he stated that he eventually wrote his lawyer a letter, Hogan alleged that there were certain times when he needed to talk to his lawyer right then, but he could not do so because the phones were cut off. Hogan testified that he never talked to his lawyer on the phone, even when the phones were working, while

3

incarcerated because he had no urgent need to speak with his lawyer when the phones were working, only when they were not working. He testified that he was able to write to his lawyer six or seven times.

Asked if anything bad happened to him because he was unable to talk to his lawyer on the telephone when he wanted to do so, he said, "Well, it's over with now because the case is finished so . . . ." He then expressly acknowledged that nothing bad had happened in his case because he could not talk to the lawyer on the phone. He said he had needed to call his lawyer because he "had something fresh on his mind," but when the phones were turned back on he had already sent the lawyer a letter. He said he was able to meet in person with his lawyer while in jail maybe five times and that the case was now over since he had plead guilty to the reduced misdemeanor charge.

## ANALYSIS

I.  STANDARDS OF REVIEW

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis. 28 U.S.C. § 1915A(a); Thompson v. Hicks, 213 F. App'x 939, 942 (11th Cir. 2007); Lewis v. Estes, 242 F.3d 375, 2000 WL 1673382, at *1 (8th Cir. 2006); Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004); Martin v. Scott, 156 F.3d 578, 579-80 (5th Cir. 1998); Lewis v. Sec'y, DOC, No. 2:10-CV-547-FTM-29, 2013 WL 5288989, at *2 (M.D. Fla. Sept. 19, 2013), aff'd, 589 F. App'x 950 (11th Cir. 2014).

Such complaints by prisoners must be dismissed upon review if they are frivolous or fail to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1); Lewis, 589 F. App'x at 952; Thompson, 213 F. App'x at 942; Shakur, 391 F.3d at 113; Carr v. Dvorin, 171 F.3d 115, 116 (2d Cir. 1999).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended). A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. Spears, 766 F.2d at 180. "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite

statement under Fed. R. Civ. P. 12(e).  Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."  Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25, 112 S. Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents.  A defendant may not use medical records to refute a plaintiff's testimony at a Spears hearing."  Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)).  However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'"  Gobert v. Caldwell, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the

facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous, because it lacks an arguable basis in law, or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the Spears hearing, fails to state a cognizable claim of violation of his constitutional rights, even under the broadest reading.[2]

---

[2] The court must "liberally construe briefs of pro se litigants and apply less stringent standards to parties proceeding pro se than to parties represented by counsel," Smith v. Lonestar Constr., Inc., 452 F. App'x 475, 476 (5th Cir. 2011), cert. denied, 132 S. Ct. 1746 (2012) (quotation omitted); Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

II.      NO SUBSTANTIVE RIGHT TO TELEPHONE PRIVILEGES

Hogan had no constitutional right to telephone privileges in general during his four-and-half month period of incarceration in the Terrebonne jail. Prison officials have broad discretion to administer conditions of confinement, and the federal courts will not interfere with legitimate prison administration in the absence of a constitutional violation. Bell v. Wolfish, 441 U.S. 520, 547-48 (1979); Smith v. Bingham, 914 F.2d 740, 742 (5th Cir. 1990).

Prisoners have "'no right to unlimited telephone use.' Instead, a prisoner's right to telephone access is 'subject to rational limitations in the face of legitimate security interests of the penal institution.'" Washington v. Reno, 35 F.3d 1093, 1100 (6th Cir. 1994) (quoting Benzel v. Grammar, 869 F.2d 1105, 1108 (8th Cir. 1982); Strandberg v. City of Helena, 791 F.2d 744, 747 (9th Cir. 1986)). "Prisons legitimately impose a variety of restrictions on inmates' use of telephones." Roy v. Stanley, No. 02-CV-555-JD, 2005 WL 2290276, at *7 (D.N.H. Sept. 20, 2005) (citing United States v. Lewis, 406 F.3d 11, 13 (1st Cir. 2005); Gilday v. Dubois, 124 F.3d 277, 293 (1st Cir. 1997); Spurlock v. Simmons, 88 F. Supp. 2d 1189, 1193 (D. Kan. 2000)).

In addition, "[a] prisoner does not retain constitutional rights that are inconsistent with the legitimate penological objectives of the correction system." Smith v. Bingham, 914 F.2d 740, 742 (5th Cir. 1990). Prisoners who hang blankets, sheets or other materials that block the view of correctional officers into the holding areas obviously implicate

concerns about prison security, and such concerns are preeminent. Thorne, 765 F.2d at 1275 (citing Block v. Rutherford, 468 U.S. 576, 589 (1984); Pell v. Procunier, 417 U.S. 817, 823 (1974)). In this case, Hogan has not asserted any facts tending to show that the restrictions on his telephone privileges reflecting disciplinary action in response to security concerns are unrelated to legitimate penological interests.

III.   NO DUE PROCESS VIOLATION IN DENIAL OF PHONE PRIVILEGES

To whatever extent, if any, that plaintiff may be claiming that his due process rights were violated based on the alleged temporary denial of telephone service, he fails to state a claim of violation of his constitutional rights.

In Sandin v. Connor, 515 U.S. 472, 481-83 (1995), the United States Supreme Court held that analysis of a prisoner's due process claim relating to denial of prison privileges begins with determining whether a constitutionally protected liberty interest exists. "Liberty interests protected by the Fourteenth Amendment may arise from two sources–the Due Process Clause itself and the laws of the States." Hewitt v. Helms, 459 U.S. 460, 466 (1983). In Sandin, the Supreme Court recognized that, although the States may create liberty interests, "these interests will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484 (citations omitted). Thus, in Sandin, when a prisoner was placed in disciplinary segregation for 30 days and the placement did not inevitably affect the duration of his sentence, the Supreme Court held

that due process does <u>not</u> require that a prisoner be afforded the procedural mechanisms previously prescribed in <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974), and <u>Hewitt</u>, 459 U.S. at 460.

"[T]he Due Process Clause does not protect every change in conditions of confinement which has a substantial adverse effect upon a prisoner." <u>Madison v. Parker</u>, 104 F.3d 765, 767 (5th Cir. 1997). "Prisoners held in lawful confinement have their liberty curtailed by definition, so the procedural protections to which they are entitled are more limited than in cases where the right at stake is the right to be free from confinement at all." <u>Wilkinson v. Austin</u>, 545 U.S. 209, 225 (2005) (citations omitted). The Fifth Circuit in <u>Madison</u> held that a prisoner's 30-day commissary and cell restrictions imposed as punishment for disciplinary violations were "merely changes in the conditions of his confinement and do not implicate due process concerns." <u>Madison</u>, 104 F.3d at 768; <u>accord</u> <u>Hernandez v. Velasquez</u>, 522 F.3d 556, 563 (5th Cir. 2008); <u>Dixon v. Hastings</u>, 117 Fed. Appx. 371, 2005 WL 17382, at *1 (5th Cir. 2005); <u>Malchi v. Thaler</u>, 211 F.3d 953, 957-58 (5th Cir. 2000). In <u>Hernandez</u> and <u>Madison</u>, the Fifth Circuit held that such restrictions do <u>not</u> represent the type of atypical, significant deprivation in which a state might create a liberty interest. <u>Hernandez</u>, 522 F.3d at 563; <u>Madison</u>, 104 F.3d at 768. Examples of prison hardships that <u>would</u> qualify as so atypical and significant as to implicate due process considerations include unwanted administration of anti-psychotic drugs, involuntary commitment to a mental hospital or

10

extension of the prisoner's sentence for his underlying criminal conviction.  <u>Sandin</u>, 515 U.S. at 484.

In the instant case, Hogan's testimony and his written submissions establish that the only action taken against him was intermittent denial of telephone privileges.  These actions do <u>not</u> constitute such an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" that particular forms of due process of the type described in <u>Wolff</u> were required.  <u>Sandin</u>, 515 U.S. at 484; <u>Madison</u>, 104 F.3d at 768; <u>see Johnson v. Livingston</u>, 360 F. App'x 531, 532 (5th Cir. 2010) (citing <u>Malchi v. Thaler</u>, 211 F.3d 953, 958 (5th Cir. 2000)) ("Loss of privileges and cell restriction do not implicate due process concerns."), <u>petition for cert. filed</u>, (U.S. May 8, 2010) (No. 09-10742); <u>Hernandez</u>, 522 F.3d at 563 (distinguishing the "extreme conditions" described in <u>Wilkinson</u> and holding that non-disciplinary "confinement to a shared cell for twelve months with permission to leave only for showers, medical appointments and family visits . . . is by no means an atypical prison experience"); <u>Dixon</u>, 117 F. App'x at 372 ("loss of commissary privileges, cell restriction, placement in administrative segregation, and extended work schedule were not atypical punishments requiring due process protections"); <u>Payne v. Dretke</u>, 80 F. App'x 314, 314 (5th Cir. 2003) ("commissary and recreation restrictions [as disciplinary punishment] . . . do not implicate a liberty interest under the Due Process Clause").  No claim of violation of due

process rights cognizable under Section 1983 can be stated under the circumstances described by Hogan.

IV.     NO FIRST AMENDMENT VIOLATION

As noted above, prisoners have "no right to unlimited telephone use." Washington v. Reno, 35 F.3d 1093, 1100 (6th Cir. 1994) (citing Benzel v. Grammar, 869 F.2d 1105, 1108 (8th Cir.); Lopez v. Reyes, 692 F.2d 15, 17 (5th Cir. 1982)).  Prison regulations concerning telephone use do not violate an inmate's First Amendment rights so long as the inmate does not suffer from an inability to communicate with the courts, counsel, family and friends.  Hill v. Estelle, 537 F.2d 214, 215 (5th Cir. 1976).

Plaintiff contends that jail officials intermittently denied him access to a telephone at times when he needed to call his lawyer to discuss issues then on his mind.  He admitted that nothing prevented him from using the mails to communicate with his lawyer during that period, that he in fact was able to write to his lawyer, and that his lawyer also visited with him personally at the jail on several occasions.  Cf. Johnson v. Stephan, 6 F.3d 691, 692 (10th Cir. 1993) (no violation of prisoner's First Amendment rights by denying him on-camera interview with reporter when alternative means of communication are available).  The telephone was available to Hogan during much of the four-and-a-half month period of his incarceration. Even accepting plaintiff's allegations as true, his claim is legally frivolous in that prison officials did not place unreasonable

12

limitations on his use of the telephone. Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985).

Prisoners have a constitutional right of access both to the courts and their counsel. Bounds v. Smith, 430 U.S. 817, 828 (1977); Pembroke v. Wood County, 981 F.2d 225, 229 (5th Cir. 1993). However, this right is not without limitations.

Significantly, a prisoner may prevail on a First Amendment claim if he demonstrates that his position as a litigant was actually prejudiced. In Lewis v. Casey, 518 U.S. 343 (1996), the United States Supreme Court noted "the requirement that an inmate alleging a [constitutional] violation must show actual injury." Id. at 349 (emphasis added). To fulfill this requirement, the inmate must prove that he was "hindered [in] his efforts to pursue a legal claim." Id. at 351. However, "the injury requirement is not satisfied by just any type of frustrated legal claim." Id. at 354 (emphasis added).

In this case, Hogan concedes that he was not only able to communicate with his counsel on several occasions by mail and in person, but also that he suffered no actual prejudice to his case by reason of the intermittent denial of telephone privileges. Thus, he wholly fails to establish an essential element of his First Amendment claim.

## **RECOMMENDATION**

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[3]

New Orleans, Louisiana, this ___16th___ day of July, 2015.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[3] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.